# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

## No. 19-7028

---

## In re: KENNETH EUGENE BARRETT, Movant.

---

## RESPONSE IN OPPOSITION TO MOTION TO FILE A SUCCESSIVE § 2255 MOTION

---

The United States of America, by and through undersigned counsel, hereby submits this response in opposition to movant Kenneth Eugene Barrett's May 14, 2019 request for authorization to file a successive motion for relief under 28 U.S.C. § 2255. As explained below, Barrett's request should be denied because the Supreme Court has not made retroactive the new rule of constitutional law announced in *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), and that narrow rule does not substantiate the claim he seeks to present in any event.

## STATEMENT

In 1999, an Oklahoma state court issued a warrant for Barrett's arrest after he failed to appear for trial on drug charges. *United States v. Barrett*, 797 F.3d 1207, 1211 (10th Cir. 2015) ("*Barrett II*"). An informant advised law enforcement that Barrett had isolated himself at home, where he was selling methamphetamine. *Id*. The informant reported that Barrett "had promised to kill any officer who came to arrest him." *Id*. The police took Barrett's threat seriously, understanding that he

1

"routinely carried firearms." *United States v. Barrett*, 496 F.3d 1079, 1083 (10th Cir. 2007) ("*Barrett I*"). The local police obtained a "no-knock" nighttime service warrant and engaged a tactical team from the Oklahoma Highway Patrol ("OHP") to lead the entry. *Id*. at 1082-83.

Shortly after midnight on September 24, 1999, three tactical team vehicles entered Barrett's property, headed toward his house. *Barrett II*, 797 F.3d at 1211; *Barrett I*, 496 F.3d at 1084. The lead vehicle was an unmarked Bronco. *Barrett I*, 496 F.3d at 1084. Another Bronco and a marked patrol car followed close behind with emergency lights flashing. *Id*. As the vehicles approached the house, gunfire erupted, hitting the lead Bronco in "the middle of the windshield, at approximately 'head level.'" *Barrett II*, 797 F.3d at 1212; *Barrett I*, 496 F.3d at 1084. The gunfire intensified as the Bronco neared the house. *Barrett II*, 797 F.3d at 1212.

The tactical team eventually reached the house. An officer in the lead Bronco, Trooper David Eales, exited and sought cover. *Barrett II*, 797 F.3d at 1212; *Barrett I*, 496 F.3d at 1084-1085. Barrett shot Eales three times in the back and arm, killing him. *Id.* at 1085. Another officer, Trooper John Hamilton, wounded by bullet fragments to the eye and shoulder, also tried to exit the Bronco but was again shot in shoulder. *Id*.; Tr. 3:539, 544.[1] Eventually, officers shot Barrett in the legs and subdued him. *Barrett II*, 797 F.3d at 1212. Inside the

---

[1] "Tr." refers to the trial transcript, cited by volume and page.

home, the police found cash, firearms, and materials used to manufacture methamphetamine. *Id.* Among the weapons was a Colt semiautomatic rifle with a 90-round capacity. *Id.* Barrett had used the gun to fire 19 rounds at the police as they approached. *Id.*

Barrett was charged in Oklahoma state court with one count of first degree murder (Eales), one count of shooting with intent to kill (Hamilton), and two counts of discharging a firearm with intent to kill (two other troopers). *Barrett II*, 797 F.3d at 1212. An initial state trial ended in a hung jury. *Id.* On retrial, a jury convicted Barrett of two lesser offenses—manslaughter and battery with a dangerous weapon—and the state court imposed a 30-year prison sentence. *Id.*

After the state proceedings, the U.S. Attorney for the Eastern District of Oklahoma obtained an indictment that charged Barrett with three homicide offenses. *Barrett II*, 797 F.3d at 1212-13. A jury convicted Barrett, as charged, of two counts of causing death through use of a firearm during a drug trafficking or violent crime (18 U.S.C. § 924(c)(1)(A) & (j)(1) (counts one and two)) and one count of killing a law enforcement officer during a felony drug offense (21 U.S.C. § 848(e)(1)(B) (count three)). *Barrett II*, 797 F.3d at 1213. The jury recommended, and the district court imposed, a death sentence on count three. *Id.* This Court affirmed, *Barrett I*, 496 F.3d 1079, and the Supreme Court denied certiorari. 552 U.S. 1260 (2008).

In 2009, Barrett filed a motion for relief under 28 U.S.C. § 2255, which the district court denied. *Barrett v. United States*, No. 09–CIV–105–JHP, 2012 WL 3542609 (E.D. Okla. Aug. 16, 2012). On appeal, this Court affirmed in part and reversed in part, remanding for an evidentiary hearing on a claim of ineffective assistance of trial counsel. *Barrett II*, 797 F.3d at 1208. Following the evidentiary hearing, the district court denied relief, concluding that counsel's performance fell below prevailing professional norms but did not prejudice the outcome of the case. *Barrett v. United States*, E.D. Okla. case no. 09-cv-105_RAW Dkt. 478, 479. The district court granted a certificate of appealability, but Barrett has not yet filed a notice an appeal.

On May 12, 2016, Barrett moved for permission to file a second or successive § 2255 motion pursuant to 28 U.S.C. § 2255(h), which this Court denied in a published opinion. *In re Barrett*, 840 F.3d 1223 (10th Cir. 2016) ("*Barrett III*"). On May 23, 2016, Barrett filed a second request to file a successive § 2255 motion, in which he sought permission to attack his § 924 convictions under *Johnson v. United States*, 135 S. Ct. 2551 (2015). *In re Barrett*, 10th Cir. No. 16-7039. This Court ordered that the request held in abeyance.

On May 14, 2019, Barrett filed this, his third, request for permission to file a successive § 2255 motion. This response in opposition follows.

# ARGUMENT

## BARRETT'S REQUEST FOR AUTHORIZATION SHOULD BE DENIED BECAUSE IT DOES NOT RELY ON A NEW RULE OF CONSTITUTIONAL LAW THAT THE SUPREME COURT HAS MADE RETROACTIVE

Barrett seeks permission to file a successive § 2255 motion in which he proposes to attack his trial counsel's performance under *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018). In essence, Barrett asks to pursue a claim that trial counsel failed to heed his personal objectives for the defense. Mot. 9-16. Barrett cannot succeed in this claim because he cannot establish that *McCoy* applies retroactively in collateral proceedings. Moreover, Barrett cannot establish that the narrow rule announced in *McCoy* substantiates his claim of error, which largely boils down garden-variety contentions that his counsel rendered ineffective assistance.

"Federal prisoners are barred from attacking their federal convictions through second or successive § 2255 motions except in very limited circumstances." *United States v. Kelly*, 235 F.3d 1238, 1241 (10th Cir. 2000). This Court may not authorize the filing of a successive motion absent a prima facie showing that (1) there is "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty"; or (2) the conviction or sentence is unlawful under "a new rule of

constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). Barrett seeks to rely on the second exception, but he cannot meet his burden for doing so.

A. *McCoy* does not Apply Retroactively

*McCoy* held that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." 138 S. Ct. 1505. The rule in *McCoy* cannot, as noted, support a successive § 2255 motion absent a prima facie showing that it applies retroactively to cases on collateral review.[2] *See Leonard v. United States*, 383 F.3d 1146, 1148 (10th Cir. 2004). Only the Supreme Court can announce the retroactivity of a new rule for purposes of § 2255(h). *See Tyler v. Cain*, 533 U.S. 656, 663 (2001); *see also Browning v. United States*, 241 F.3d 1262, 1264 (10th Cir. 2001) (*en banc*) ("a rule is 'made retroactive' . . . only if the [Supreme] Court actually applies the rule retroactively, or makes some explicit statement regarding retroactivity").

Barrett has not identified any Supreme Court statement or action indicating the retroactive applicability of *McCoy* applies to § 2255 cases. *McCoy*, an opinion

---

[2] The government agrees that *McCoy* satisfies some of the criteria in § 2255(h)(2)—*i.e.*, it announced a rule of constitutional law under the Sixth Amendment, *see* 138 S. Ct. at 1507-08, and that rule is "new" because it was not dictated by precedent existing at the time Barrett's conviction became final, *see Chaidez v. United States*, 568 U.S. 342, 347 (2013).

issued on direct appeal, does not express or imply any extension to collateral

actions, a fact Barrett tacitly acknowledges.  In an effort to establish retroactivity,

he relies exclusively upon *Hashimi v. United States*, 139 S. Ct. 377 (2018), in

which the Supreme Court vacated a Fourth Circuit opinion with directions for

further consideration in light of *McCoy*.  But *Hashimi* arose in the context of a

direct appeal, and provides no basis for inferring *McCoy's* applicability to § 2255

cases.  Indeed, the Supreme Court has cited *McCoy* on only two other occasions,

*Garza v. Idaho*, 139 S. Ct. 738 (2019) and *Clark v. Louisiana*, 138 S. Ct. 2671

(2018), both direct appeals.  As such, Barrett cannot make the requisite prima facie

showing of retroactivity in collateral cases for permission to file his fourth § 2255

motion.  *See In re Payne*, 733 F.3d 1027, 1029-30 (10th Cir. 2013) (the fact that

the Court announced and applied a rule on direct review showed that Court did not

make it retroactive).[3]

The Supreme Court will not likely hold that *McCoy* applies retroactively.  It

has repeatedly held that new constitutional rules of criminal procedure will not

apply to cases that have already become final and that only two types of rules "fall

---

[3] The Supreme Court has also recognized that a new rule can be "made retroactive" "with the right combination of holdings" over the course of multiple cases.  *See Tyler v. Cain*, 533 U.S. 656, 663-66 (2001).  But Barrett does not argue that this principle applies here, and with good reason:  no combination of "Supreme Court *holdings* . . . dictate that the Supreme Court, itself, has made" the rule in *McCoy* "retroactive on collateral review."  *In re Gieswein*, 802 F.3d 1143, 1147 (10th Cir. 2015).

7

outside this general bar on retroactivity"—substantive rules and watershed rules of procedure. *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (quoting *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion)). *McCoy* did not announce a "substantive" rule because it "did not exempt any conduct from criminal punishment or spare any defendants from punishment because of their status or the nature of their offense." *United States v. Hopkins*, 920 F.3d 690, 702 (10th Cir. 2019); *see Welch*, 136 S. Ct. at 1264-65 (holding a rule is substantive when "it "alters the range of conduct or the class of persons that the law punishes") (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)).

*McCoy* also does not announce a "watershed" procedural rule. "To qualify as watershed, the rule must (1) be 'necessary to prevent an impermissibly large risk of an inaccurate conviction' and (2) 'alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" *Hopkins*, 920 F.3d at 700 (quoting *Whorton v. Bockting*, 549 U.S. 406, 418 (2007). "[T]he Supreme Court has never identified a rule that meets this description," *Hopkins*, at 700, and has called it "unlikely that any such rules have yet to emerge," *Whorton*, 549 U.S. at 417 (brackets and internal quotation marks omitted).

The narrow rule announced in *McCoy* does not buck this trend. Of central importance, *McCoy* did not introduce a procedure "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 313 (plurality

8

opinion). As the Court explained, *McCoy*'s conclusion that defense counsel may not concede his client's guilt at the guilt phase of a capital trial "is not designed to protect the defendant from erroneous conviction." *McCoy*, 138 S. Ct. at 1511 (quoting *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017)). Rather, the rule guarantees "the defendant's right to make the fundamental choices about his own defense" and otherwise guards against effects "too hard to measure." *Id. McCoy* therefore protects the defendant's interests in dignity and autonomy, not the accuracy of his or her conviction. *See id.* at 1508. In practice, the *McCoy* rule is unlikely to prevent inaccurate convictions: it will likely arise only in capital cases in which defense counsel recognizes that the strength of the prosecution's evidence favors an admission of guilt to best serve the client's interests at the penalty phase. *See McCoy*, 138 S. Ct. at 1512 (recognizing that the government's case against McCoy was "strong" and that counsel "reasonably" believed that a concession of guilt minimized the likelihood of a death sentence); *id.* at 1514-15 (Alito, J., dissenting) (explaining that no competent attorney would admit guilt of all charged offenses in a non-capital case and that, even in a capital case, no attorney would admit guilt over a defendant's objection unless the evidence was overwhelming).

Barrett appears to accept that *McCoy* concerns "[t]he Sixth Amendment's protections over the autonomy of a criminal defendant" rather than the accuracy of criminal proceedings, Mot. 14, but he argues the Court nonetheless established a

watershed rule by holding that a *McCoy* error is "structural," 138 S. Ct. at 1511—that is, that it requires reversal without a case-specific showing of prejudice. That argument lacks merit. An error can qualify as "structural" not because of its importance or centrality to the accuracy of a criminal trial, but simply because "its effects are too hard to measure." *Id.*; *see United States v. Gonzalez–Lopez*, 548 U.S. 140, 150 (2006). Accordingly, the Supreme Court recognized as far back as *Tyler* that "[c]lassifying an error as structural does not necessarily alter our understanding of . . . bedrock procedural elements" in a way that would trigger the watershed-rule exception. *Tyler*, 533 U.S. at 666 n.7. And this Court has recently reaffirmed that other Sixth Amendment violations categorized as structural errors—including the deprivation of a defendant's counsel of choice—do not qualify as watershed procedural rules that are retroactive on collateral review. *Hopkins*, 920 F.3d at 701, 703; *see Rodriguez v. Chandler*, 492 F.3d 863, 866 (7th Cir. 2007). Under these precedents, the fact that a *McCoy* error is labeled "structural" does not suffice to make it the first ever watershed procedural rule.

B. Even if *McCoy* Were Retroactive, it Does Not Substantiate Barrett's Claim

Assuming *arguendo*, *McCoy* applied retroactively on collateral review, Barrett is still not entitled to authorization because he has not made a prima facie showing that his proposed successive motion "relies on" the holding in the manner required by § 2255(h)(2). Under § 2255(h)(2), a movant must establish not only

10

that the proposed motion contains a new, previously unavailable rule of constitutional law made retroactive by the Supreme Court, but that the claim "relies on" that new rule. *See United States v. Murphy*, 887 F.3d 1064, 1067 (10th Cir.) ("A motion 'contains' a new rule of constitutional law, as required by § 2255(h)(2), if the claim for which authorization is sought 'relies on' the new rule"), *cert. denied*, 139 S. Ct. 414 (2018). At the authorization stage, the prisoner need only make a prima facie showing. *See id.* at 1068 (defining a "prima facie showing to the court of appeals . . . as a sufficient showing of possible merit to warrant a fuller exploration by the district court") (internal quotation marks omitted).

This Court has made clear that the prima face showing does not equate to "a preliminary merits assessment" of the underlying claim, *Ochoa v. Simons*, 485 F.3d 538, 541-42 (10th Cir. 2007), but it has not suggested that a prisoner discharges his burden by merely invoking a new rule. Rather, the inmate must establish that the new rule "substantiates" his claim. *See Henry v. Spearman*, 899 F.3d 703, 706 (9th Cir. 2018). And in addressing that requirement, a court of appeals may ask whether "it is clear as a matter of law, and without the need to consider contested evidence, that the petitioner's identified constitutional rule does not apply to the petitioner's situation." *Evans-Garcia v. United States*, 744 F.3d 235, 240 (1st Cir. 2014). If the answer to that question is yes, then the court of appeals "should deny certification." *Id.*

11

The record before this Court makes it clear that Barrett's proposed § 2255 motion does not rely on *McCoy* in the manner required by the statute.  As noted, *McCoy* held that criminal defendants may bar counsel from conceding guilt, even if the attorney has concluded that such a concession would optimize the likelihood of avoiding capital punishment. 138 S. Ct. at 1505.  The *McCoy* Court reasoned "[t]rial management is the lawyer's province," but defendants enjoy "[a]utonomy to decide that the objective of the defense is to assert innocence." *Id.* at 1508.  The decision to maintain one's innocence does not constitute a "strategic choice[] about how best to achieve a client's objectives; [it is a] choice about what the client's objectives in fact are." *Id.*  Violations of a defendant's autonomy under the Sixth Amendment are structural and not subject to review for prejudice. *Id.* at 1511.

At trial, Barrett's counsel did not concede their client's guilt, and the proposed successive § 2255 motion does not assert otherwise.  *See* Mtn. App'x A. Without any evidence that counsel conceded his guilt, Barrett seizes upon a rhetorical device in an effort to establish a Sixth Amendment violation. Specifically, Barrett notes that counsel's opening statement included a remark that "Mr. Barrett may be guilty of some things, but he's not guilty of murder in connection with the charges." *Id.* at 15 (citing Tr. Vol. 20 at 4314).  Barrett may find the statement unartful, but it *denied* the three homicide charges leveled against him by the United States.  Barrett cannot succeed in transmogrifying the denial of

guilt into a concession under *McCoy*, simply because counsel allowed for the possibility that he bore responsibility for some other, unspecified, wrongdoing.

Elsewhere, Barrett's proposed § 2255 motion alleges that he did not like his trial counsel. App'x A at 8. It further argues that trial counsel provided a "lackadaisical opening statement" concerning a claim of self-defense. *Id*. at 9. It contends that trial counsel made insufficient efforts to obtain jury instructions to advance the affirmative defense. *Id*. It claims that budget constraints limited the defense's pre-trial investigation. *Id*. at 10. It observes that trial counsel attempted to broker a plea agreement though Barrett indicated he would prefer the death penalty to a life sentence. *Id*. at 11. It states that trial counsel failed to heed Barrett's handwritten notes concerning the presentation of evidence, and that they failed to adduce "extrinsic evidence" to support a claim of self-defense. *Id*. at 11-12. It argues that trial counsel permitted the jury to consider inconsistent testimony and the defendant's paranoia without adequate legal guidance through instruction. *Id*. at 16.

These contentions may amount to, or support, allegations of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). But taken as true, none of them sound within the structural error doctrine defined by *McCoy*. In short, the arguments do not claim that trial counsel failed to heed Barrett's objectives for the defense, much less that they overtly conceded guilt over

13

Barrett's objection (the actual issue in *McCoy*).  Clearly, "as a matter of law, and without the need to consider contested evidence," the constitutional rule in *McCoy* "does not apply to [Barrett's] situation."  *See Evans-Garcia*, 744 F.3d at 240. Accordingly, this Court should not permit Barrett to pursue any claim under *McCoy* in a successive § 2255 motion even if that rule were retroactive to cases on collateral review.

## CONCLUSION

Based on the foregoing reasoning and authority, the United States respectfully urges this Court to deny Barrett's request to file a successive § 2255 motion.

Dated: June 3, 2019.

Respectfully submitted,

BRIAN J. KUESTER
United States Attorney,
Eastern District of Oklahoma

*S/Christopher J. Wilson*
CHRISTOPHER J. WILSON
First Assistant U.S. Attorney
520 Denison Ave
Muskogee OK 74401
(918) 684-5175
(918) 684-5130 fax
chris.wilson@usdoj.gov

BRIAN A. BENCZKOWSKI
Assistant Attorney General

*S/Jeffrey B. Kahan*
JEFFREY B. KAHAN
Deputy Chief, Capital Case Section
U.S. Dept. of Justice
1331 F. Street, NW; 6th Fl.
Washington, D.C. 20530
(202) 305-8910
(202) 353-9779 fax
jeffrey.kahan@usdoj.gov

**CERTIFICATE OF ECF FILING AND DELIVERY**

I, hereby certify that on June 3, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Movant:

- Mr. David B. Autry dbautry44@hotmail.com
- Ms. Joan M. Fisher Joan_Fisher@fd.org
- Ms. Carrie Ward: carrie_ward@fd.org

I hereby certify that I caused a true and correct copy of the foregoing document to be mailed via the United States Postal Service on June 3, 2019, to the following:

Not Applicable as Defendant Has Counsel

*S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN

**ADDITIONAL CERTIFICATIONS**

I hereby certify as follows:

1. All required privacy redactions have been made pursuant to Fed. R. App. P. 25(a)(5), Tenth Circuit Rule 25.5, Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1; Fed. R. Bankr. P. 9037;
2. No hard copies of this pleading are required to be submitted to the clerk's office;
3. This ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program, McAfee Endpoint Security, updated June 3, 2019, and, according to the program, is free of viruses.
4. The text of this motion is 3421 words.

Dated: this 3rd day of June 2019:

*S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN